IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRIAN B. PETTIS, | * | |
| Plaintiff, | * | CV NO.: 09-388-KD-N |
| vs. | * | |
| BOSARGE DIVING, INC., | * | |
| Defendant. | * | |

MEMORANDUM IN SUPPORT OF DAUBERT MOTION
REGARDING DOUGLAS MILLER, DR. BRETT HART AND DR. RICHARD MOON

COMES NOW the Plaintiff, Brian Pettis, and submits the following Memorandum in Support of his Motion to exclude the expert testimony of Douglas Miller, and portions of the testimony of Dr. Brett Hart and Dr. Richard Moon. For the reasons set forth below, Plaintiff respectfully submits that these experts have insufficient expertise in the area in question, their testimony is not the product of reliable principles and methods, and their testimony would not be helpful to the trier of fact.

FACTS AS TO DOUGLAS MILLER

Doug Miller was deposed on March 29, 2010 in the above styled matter regarding his involvement as Defendant's expert vocational witness. As an attachment to his deposition, Mr. Miller attached his vocational report regarding Brian Pettis. This document is attached as **Exhibit B** to this current motion. In both his report and deposition, Mr. Miller offered his expert opinion on Brian Pettis' current earning capability.[1] It is Plaintiff's belief that Defendant will call Mr. Miller at trial to testify as to the Plaintiff's current earning capability.

Mr. Miller's report indicates that the Plaintiff has worked continuously since the date of his injury. (**Exhibit B,** p. 4 of Doug Miller Report). Following his injury and termination from Bosarge Diving, the Plaintiff worked for several other local dive companies. (**Exhibit B,** p. 4 of Doug Miller Report). The Plaintiff applied with numerous companies before finally accepting a position in July of

---

[1] See page 4 of Doug Miller Report

1

2009 with Mitchell Container as a maintenance helper. (**Exhibit B,** p. 4 of Doug Miller Report). The Plaintiff has been with Mitchell Container for over a year. (**Exhibit B,** p. 4 of Doug Miller Report).

In his deposition Mr. Miller testified, "I got on and Googled boat Captain jobs, came up with a number of boat captain jobs." (**Exhibit C, Doug Miller Depo.** p.9, lines 21-22). Mr. Miller later testified, other than that, I have not done any job development or job placement." (**Exhibit C, Doug Miller Depo.** p.10, lines 3-4).

As the Plaintiff has been employed since the date of his injury, he mitigated his damages and thusly is not entitled to a maintenance award under the present Jones Act claim.[2] Since the Plaintiff is currently employed, his current earning capacity is not in question. What remains in question is the Plaintiff's future lost earnings. In determining this figure, this court can simply review both the Plaintiff's testimony and his recent tax returns to determine his current earnings since his injury. By comparing the Plaintiffs current earnings with his pre-injury earnings the court can determine if the Plaintiff has a future economic loss.

## METHODOLOGY

In essence, Mr. Miller concentrated on Mr. Pettis' previous jobs in determining his expert opinion on Mr. Pettis' current earning capacity. Mr. Miller states in his report, "based on Mr. Pettis' residual employment profile, it is my opinion that he could return to work in any other occupation which he worked in the past, including the occupation of dive tender and deckhand." (**Exhibit B,** p. 4 of Doug Miller Report). In making this opinion, Mr. Miller did not refer to any scholarly or technical references in his report. He simply applied the fact that Dr. Keith Van Meter ordered Mr. Pettis to refrain from Diving and assumed the Mr. Pettis could do all other jobs. (**Exhibit B,** p. 4 of Doug Miller Report). Mr. Pettis does not have extensive experience as a deck hand and no experience as a commercial boat captain. The Plaintiff has applied with numerous companies for deckhand, captain and dive tender positions. The job Mr. Pettis took with Mitchell Container simply was the best job Mr. Pettis could obtain. This is the only evidence the court needs to hear regarding the subject of Mr. Pettis' current earning capability.

---

[2] Plaintiff filed a Joint Motion with the Defendant dismissing his Maintenance and cure claims (Ct. Doc 76)

In sum, Plaintiff respectfully submits that Mr. Miller's methodology is unreliable and does not rely on any scholastic reasoning that provides use to this Court regarding the subject of determining Mr. Pettis 'current earning capability.

## LACK OF ASSISTANCE TO THE FINDER OF FACT

In light of all of the foregoing, it is respectfully submitted Mr. Miller's testimony would not be helpful to the Court in the instant matter. In offering Mr. Miller's testimony, the Defendant attempts to convince the Court that the Plaintiff has had no impact to his earning capability; however, Mr. Miller's total lack of consideration to the Plaintiff's year long job search for deckhand, captain and dive tender positions, together with his faulty methodology would not assist the Court in the effort and would only serve to confuse the record. To the extent the type of information in question would be of assistance to the Court, the testimony of Tommy Sanders, an eminently qualified expert in this area who utilized numerous job applications Mr. Pettis filed with various local companies in the maritime industry, could readily supply that information.

## FACTS AS TO DR. RICHARD MOON AND DR. BRETT HART

Dr. Brett Hart and Dr. Richard Moon are hyperbaric physicians, board certified in emergency medicine, which have been hired as medical experts by the Defendant Bosarge Diving. These two physicians have both testified about the Plaintiff's injuries he suffered as a result of his commercial diving accident. Specifically, both physicians have testified on the subject of Vertigo. Vertigo is the name of the condition or physical injury to the Plaintiff's inner ear.

Neither of Defendant's experts are medical physicians qualified or practicing in the field of Otolaryngology. (See **Exhibit D**, CV of Richard Moon, and **Exhibit F**, CV Brett Hart). Both physicians testified to this fact in their depositions. In response to a question regarding whether treatment and diagnosis of inner ear injuries was outside his area of expertise, Dr. Hart testified "I'm not an otolaryngologist, so that would be outside." (**Exhibit E, Depo. of Dr. Hart**, p. 21, lines 1-2). Dr. Moon testified he was board certified in, "Undersea and hyperbaric medicine, Internal medicine, pulmonary medicine and anesthesiology." (**Exhibit G, Depo. of Dr. Moon**, p. 7, lines 7-13).

As such, Dr. Richard Moon and Dr. Brett Hart are precluded from testifying to subjects beyond their areas of expertise. The only person listed in the Joint Pretrial Document qualified to testify in the field of Otolaryngology regarding the Plaintiff's physical damages to his inner ear is Plaintiff's treating physician Dr. Mark Gacek, M.D.

Based on the abovementioned facts, the Court should find that Dr. Richard Moon and Dr. Brett Hart lack the qualifications necessary to testify to the Plaintiff's vertigo symptoms in this matter.

LAW

The Court is no doubt well versed in the law regarding admissibility of expert testimony. See, *Radcliff v. Tate & Lyles Sucralose, Inc.,* 2008 WL 5071900 (S.D. Ala.). The following recitation is included to assist the Court in identifying the principal cases and relevant language contained therein.

"The admission of expert evidence is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005) citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); see also *Radcliff v. Tate & Lyle Sucralose, Inc.,* 2008 WL 5071900 (S.D. Ala.) (Court excluded expert testimony finding expert's methodology unreliable; expert's testimony based upon assumptions and speculation rather than on principles and methods supported by reliable facts). Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . ." if certain criteria of reliability (as described in *Daubert*) and relevance are established. Fed. R. Evid. 702. Thus, to be admissible, expert testimony must be helpful to the trier of fact, relevant to an issue in the case, and reliable.

In *Daubert*, the Supreme Court described the analytical framework for determining the admissibility of expert testimony under Rule 702. There, the Court held that Rule 702 requires courts to act as "gatekeepers" who must make a "preliminary assessment of whether the reasoning and methodology underlying the testimony is scientifically valid and whether that reasoning or methodology

4

properly can be applied to the facts in issue." 509 U.S. at 592-93. "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury'". *Rink,* 400 F.3d at 1291 citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002). To fulfill their "gatekeeping" function under *Daubert*, district courts are required:

> to engage in a rigorous inquiry to determine whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'

Id. at 1291-92 quoting *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). The party seeking to introduce the expert testimony bears the burden of establishing its reliability by a preponderance of the evidence. See *Rink*, 400 F.3d at 1292 citing *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1306 (11th Cir. 1999).

To be reliable, the testimony must relate to "scientific … knowledge, which implies that the testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief." *Curtis*, 174 F.3d at 668. An expert must "employ. . . in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). As the Fifth Circuit stated in *Moore*, "the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and therefore, are reliable." 151 F.3d at 276.

With respect to the "reliability" inquiry, Rule 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In *Daubert*, the court identified a nonexclusive list of factors to be considered in determining the reliability of an expert's proffered testimony, including: (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique and methodology has been

subjected to peer review and publication; (3) whether the methodology and scientific technique has a known rate or potential rate of error and the existence and maintenance of standards controlling its operation; and (4) whether the technique and methodology is generally accepted in the scientific community. 509 U.S. at 593-95. See also Rink, 400 F.3d at 1292 citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341, 1345 (11th Cir. 2003) (requiring expert testimony be based upon "sufficient data"). In applying these non-exhaustive factors, a court should place its "primary focus…'solely on principles and methodology, not on the conclusions they generate.'" *Allison,* 184 F.3d at 1312 quoting *Daubert*, 509 U.S. at 595; Rink, 400 F.3d at 1292. "Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Allison,* 184 F.3d at 1312; see also Rink, 400 F.3d at 1294 citing *General Elec. Co. v. Joiner*, 52 U.S. 136, 146, 118 S.Ct. 519, 139 L.Ed.2d 508 (1997) ("district court's consideration of data is proper in the context of evaluating methodology when an 'analytical gap [exists] between the data and the opinion proffered'").

After the party seeking to offer and introduce the expert testimony has demonstrated its helpfulness and reliability, it must then prove that the proffered testimony is relevant. Relevance exists where there is "a valid . . . connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591-92. Under the relevance inquiry, "the court must 'ensure that the proposed expert testimony is 'relevant to the task at hand,' … i.e. that it logically advances a material aspect of the proposing party's case." *Allison*, 184 F.3d at 1312 citing *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand); see also *Boca Raton Comm. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). "Thus, the evidence must have a valid scientific connection to the disputed facts in the case." *Allison*, 184 F.3d at 1312 citing *Daubert*, 509 U.S. at 591 (holding "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes…. Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility"). "[I]f an expert opinion does not have a 'valid scientific

6

connection to the pertinent inquiry' it should be excluded because there is no 'fit'." Boca Raton, 582 F.3d at 1232 quoting *Daubert*, 509 U.S. at 591-92.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that the Court should disallow the expert testimony of Douglas Miller, and portions of the testimony of Dr. Brett Hart and Dr. Richard Moon that concern the Plaintiff's vertigo condition.

Respectfully submitted:

       /s/Dwain C. Denniston, Jr.
DWAIN C. DENNISTON, JR. (DEN027)
ATTORNEY FOR PLAINTIFF

**OF COUNSEL:**
HUEY LAW FIRM LLC
P. O. Box 1806
Mobile, Alabama  36633
(251) 433-6622
dwdenniston@hueyfirm.com

**CERTIFICATION OF SERVICE**

   I hereby certify that on this 17th day of September, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

Greg Buffalow, Esq.
Mark Dowdy, Esq.
Alford, Clausen & McDonald, LLC
One Saint Louis Centre, Suite 5000
Mobile, AL  36602
ATTORNEYS FOR THE DEFENDANT

                /s/Dwain C. Denniston, Jr.
                DWAIN C. DENNISTON, JR. (DEN027)